THE LEWISTON STEAM MILL COMPANY *vs.* RODNEY F. FOSS.

Androscoggin.    Opinion June 5, 1889.

*Attachment.   Return.   Town Clerk.   R. S., c. 81, § 26.*

An attachment of personal property, which by reason of its bulk or other special cause, can not be immediately removed, may be preserved, by the attaching officer filing a return of the attachment in the town clerk's office, as provided by R. S., c. 81, § 26.

The validity of the attachment depends on the doings of the attaching officer. It will not be invalidated by the mistake of a town clerk in recording it.

REPORT, on facts agreed.

Action on the case to recover damages of the defendant, city clerk of Auburn, alleged to have been sustained by the plaintiffs, through defendant's mistake and negligence in recording an attachment.

The writ is dated Sept. 6th, 1887 :—Ad damnum, one hundred and fifty dollars :—plea, the general issue, which was joined.

The writ has two counts, one for the loss of a lien attachment, and one for loss of an ordinary attachment of the property in question ; both however intended to cover the same claim.

The facts are as follows :

February 17, 1887, Jonas W. Strout and Frank H. Fellows, copartners as Strout & Fellows, were indebted to the plaintiff in the sum of $74.79 for materials furnished the said Strout & Fellows, within ninety days next preceding said date, used in the erection of a certain wooden building, described fully in the plaintiffs' writ.

On said date, the plaintiff commenced suit against said Strout & Fellows, duly claiming a lien, and commanding the officer to attach, &c., to enforce the same.

The writ in said suit was duly delivered to the sheriff for service, and pursuant to the command in said writ said officer attached said building, as the property of the debtors, and it being of such bulk that it could not easily be removed, filed in the office of the city clerk of the city of Auburn, where said building was

located, an attested copy of so much of his return as is required by the statute in such cases.

On the back of said document appears the following :

"Androscoggin, ss,—Registry of deeds,—Received, Feb. 18, A. D. 1887, at 10 h, 50 m, A. M.

RODNEY F. FOSS, *City Clerk.*

The foregoing return of the officer was placed on file by said clerk in his office, and remains on file in the office of the city clerk of Auburn.

On the city records, in the book of attachments, the following entries were made by said defendant :—

Defendants—Fred H. Fellows of the firm of Strout & Fellows.

Plaintiffs—Lewiston Steam Mill Company.

Date of Writ—Feb. 17, 1887.

Court Returnable—L. M. C.

Officer, Hillman Smith.

Description of the property—One story wooden building situated in Auburn on Oaks road leading to Danville Junction.

Date of Attachment—1887, Feb. 17, 4 h, P. M.

Amount—$100.

Date of entry—1887, Feb. 18, 10 h, 50 m, A. M.

City Clerk, R. F. Foss.

No.—46.

February 19, 1887, Strout & Fellows mortgaged said building to one N. M. Neal, which mortgage was duly recorded in the city clerk's office, in Auburn, for a sum exceeding the value of said building, but other personal property was included in said mortgage, which with said building, exceeded in value the amount of said mortgage.

The suit of the Lewiston Steam Mill Company proceeded to judgment against the said Strout & Fellows, and execution issued thereon, against the defendants and said building, on the sixth day of May, 1887, for the sum of $75.77, debt or damage, and $8.49, costs of suit.

Said execution was seasonably placed in the officer's hands, who sold the property to the plaintiffs, for one dollar, May 31, 1887, after giving public notice of the sale, by posting notices of the sale

in Auburn; but did not post any notices in Lewiston, where the sale took place.

Afterwards the mortgagee, having tendered the plaintiffs one dollar to redeem their claim, received a bill of sale from them of their interest in said building.

There was no other property of the defendants which could be attached to satisfy said execution, and the same was duly returned into court, satisfied only in the sum of one dollar, as aforesaid.

Since the time of said sale and subsequent to the time of bringing this suit, the said Fellows went into insolvency, and the plaintiff's are entitled to receive a dividend on their claim against said insolvent estate, amounting to $14.88, as of Sept. 15, 1887; which is all they have received on said claim.

Upon such of the foregoing facts as, would be admissible or are relevant and material, the law court were to render such judgment as the law and facts require.

*Savage and Oakes*, for plaintiffs.

The law required the defendant to receive a copy of the officer's return, noting thereon the time, enter it in a suitable book, and keep it on file for inspection of those interested therein. R. S., c. 81, § 26.

The law provides for the clerk's fee.

The clerk negligently failed to do his duty. The only rational interpretation of the law would seem to be that the return was to be recorded as any other instrument.

This is evident from the closing sentence of the section above cited, which in providing for cases in an unincorporated place says, "such copy shall be filed and recorded in the office of the clerk of the oldest adjoining town in the county."

But, granting that the defendant would have been justified if he had merely filled out the blanks in his book with correct abstracts, instead of the full record, yet, by what seems to be extreme negligence, he did not even do this. The officer's return gave the names of the defendants correctly,—"Jonas W. Strout and Frank H. Fellows, late copartners as Strout & Fellows"—

The city clerk, got it, "Fred H. Fellows, of the firm of Strout & Fellows."

If the alteration of the middle letter of a name, in a certificate of attachment, is sufficient to make it of no effect, (*Dutton* v. *Simmons*, 65 Maine, 583) what must be the effect of the entire change of the first name, as in this case?

There is nothing in the record to show to what court the action was returnable. "L. M. C.," which was all our clerk found time to write, might, indeed, mean Lewiston Municipal Court, or it might mean almost anything else.

But it certainly could give no information, to any one possibly desiring to contest the attachment, at which term of the court it would be necessary for him to appear.

If the record is to be of any value, at all, it must be sufficiently accurate to furnish constructive notice of all necessary facts connected with the return, so that a reasonable person, on inspection of it would be aware that the property of Frank H. Fellows and Jonas W. Strout was attached.

The negligence of the recording officer in making an incorrect entry upon his books invalidates the attachment, as against subsequent incumbrances.

It has recently been decided in this state that a mortgage for two thousand dollars, recorded as two hundred dollars, "was not proof of the record of the two thousand dollar mortgage." *Hill* v. *McNichol*, 76 Maine, 314.   See also cases there cited.

The strongest cases we find on the defendant's side of the question, are those arising under a statute which provides that the instrument is to take effect from the time it is filed.   Jones on Mortgages makes this distinction.   He lays down the general proposition that "if the record of a mortgage be defective for any cause, it does not amount to constructive notice, * * * * * the obligation of giving notice rests upon the party holding the title."   Jones, Mort., § 550.

But he qualifies this by adding, "where the law makes the record complete as constructive notice from the time of delivery of the mortgage to the recording officer to be recorded, it follows that any error in transcribing the deed, as for instance, * * * in the sum secured by it, does not prejudice the mortgage."   Id. § 552.

Our statute contains the provision referred to above, namely, "A deed or instrument" is to be minuted "with the time when it was received and filed, and shall be considered as recorded at the time when such minute is made." R. S., c. 7, § 15.

In regard to the effect of such a provision, it seems apparent that there is a conflict between the law as laid down by Mr. Jones, and that enunciated in *Hill* v. *McNichol*, cited above.

The different states of the Union are hopelessly divided on the whole question. The cases are collected in 91 Am. Dec. 109, note.

To the cases cited against our position may be added that of *Sykes* v. *Keating*, 118 Mass. 517; but it may be remarked that this case was decided with two of the judges absent, and that no authorities are given for the position taken.

We think that with regard to a deed or mortgage, the position of the court in Maine is decisively taken in *Hill* v. *McNichol*.

The further question arises, whether an attachment as in this case stands on any different basis.

Why should it? On general principles is there any good reason for applying one rule of law to an incumbrance in the shape of a conveyance, and another to one in the shape of an attachment? It would seem to introduce unnecessary confusion into our practice.

Why should a party who finds a mortgage recorded for the sum of two hundred dollars, upon a piece of property which he thinks of buying, be entitled to rely upon the record as stating the whole incumbrance, but if he finds an attachment for two hundred dollars, be obliged to hunt up and examine all the proceedings, before he has a right to conclude that it should not read two thousand dollars, instead? Or, to put it differently,—if he should look through the records for an incumbrance upon the title of John Jones or Frank H. Fellows, but should only find incumbrance upon the property of William Jones or Fred H. Fellows, he might rely upon the record as he found it. Is the court then to say that if he looks for an attachment against John Jones or Frank H. Fellows, and only finds one against Fred H. Fellows, he must hunt further? or in other words, for it would practically amount

to the same thing, he must, at his peril, in every case, find the original papers placed in the hands of the recording officer.

So much for the reason of the matter. It would seem that unless the legislature had made it necessary for the courts to do so, they would hesitate long before saying that the record was to be relied on in the one case, and something else, entirely indefinite, in the other.

We believe however, that as our statute reads, the reason is stronger for holding that such an attachment, as the one in question, must stand or fall by the record, than in the case of a mortgage.

As we have suggested, our statute provides that mortgages, &c. shall take effect from the time they are filed for record. So in the case of attachment of real estate, R. S., c. 81, § 59.

If the principle to which we have referred, as laid down by Jones, and sustained by the decisions in a number of the states, that there is a distinction when the law provides, that an instrument shall take effect from the time of filing, is to apply at all in Maine, it must apply, under the sections above cited, to the case of a mortgage or real estate attachment. But the contrary doctrine has been clearly established in *Hill* v. *McNichol.*

Nothing is said in c. 81, § 26, about the relation of the attachment to the time of filing. There is the simple substitution of constructive for actual possession, and we submit that the constructive possession must be shown by the entries of the clerk, sufficiently so that a purchaser may be informed by the appearance of the record how the property is held,—and that he may rightfully depend on the record as he finds it to inform him of his title.

*N. & J. A. Morrill,* for defendant.

Assuming the inaccuracies on the part of the clerk to be so material, that a subsequent purchaser would have no notice of the attachment from the clerk's entry, still the attachment itself was not thereby rendered inoperative. The entry by the clerk is no part of the attachment; it is simply an index and the attachment is effectual without it.

The provision of § 26, relating to the city clerk is a subsequent

matter. He shall "receive the copy, noting thereon the time, enter it in a suitable book, and keep it on file for the inspection of those interested therein." The only parties having any interest in the entry to be made by the city clerk are those who, as subsequent purchasers or otherwise, may have occasion to look for attachments; and as to them, it is simply an index; if it is sufficiently full, so that such parties can refer to the files, they have no cause for complaint.

In this case, if there was any failure of duty by the clerk, which it is not necessary to discuss, it was to N. M. Neal, the mortgagee, and not the plaintiff. *Darling* v. *Dodge*, 36 Maine, 370; *Sykes* v. *Keating*, 118 Mass. 517; *Schell* v. *Stein*, 76 Pa. St. 398, S. C. 18 Am. Rep. 416; *Bishop* v. *Schneider*, 46 Mo. 472, S. C. 2 Am. Rep. 533; *Chatham* v. *Bradford*, 50 Ga. 327, S. C. Am. Rep. 692.

In all the three cases last cited it was held that the index was no part of the record of the deed; so here, the entry by the clerk is no part of the attachment; that was valid and effectual when the officer seasonably filed his copy in the clerk's office, especially if the copy, as here, remained on file.

But the case shows that the plaintiffs' own action caused the damage of which it complains.

It appears that the Neal mortgage of February 19, 1887 was given after the attachment, and that the mortgage covered not alone the building which the plaintiff attached, but also other personal property "which with said building exceeded in value the amount of the mortgage."

The officer's return on the execution shows that he sold "said building" on May 31, 1887, for one dollar to plaintiff, who afterwards accepted from the mortgagee the sum of one dollar in discharge of its claim on said building.

It thus clearly appears that when they made the seizure on execution, plaintiffs' attorneys did not consider the attachment lost, for they thereby endeavored to "enforce the plaintiffs' lien claim;" the mortgagee did not so consider, for he tendered the price for which the building was sold "to redeem plaintiffs' claim on said building," and the plaintiff received the money "in dis-

charge of the same," and executed a bill of sale to said mortgagee. The idea had not then come to them that the attachment was worthless ; they paid their own price for.the building and received their money,—the amount which they had fixed as the value of the building, and its true value for anything that appears in the case.

That they did not see fit to bid more was their own misfortune ; that no other person bid higher may possibly be explained by the fact that the officer instead of posting the notices of sale and of adjournment "in the town or place of sale" as required by R. S., c. 84, § 4, posted them in Auburn, the sale being in Lewiston.

The fact is, this claim that the attachment was lost through the negligence of the clerk is an after-thought, and utterly inconsistent with the plaintiffs' course in the matter. The loss occurred in not bidding the building in for a larger sum, if it was worth more ; if not, they suffered no loss, for they received the full value of their attachment.

It is impossible to state what the fact is as to the claim of loss, for the value of the building does not appear in the case, except as it is to be inferred from the price for which it was sold by the officer.

For this reason, if for no other, it seems to us impossible to render a judgment for the plaintiff, there being no evidence that a dollar was lost.

WALTON, J. The question is whether the mistake of a town clerk in recording an attachment will invalidate it. We think it will not. The validity of the attachment does not depend upon the doings of the clerk, but upon the doings of the officer. If the officer has in all particulars performed his duty, nothing which the town clerk can do or omit to do will invalidate the attachment. This will be made plain by a reference to the statute. The statute declares that:—

"When any personal property is attached, which by reason of its bulk or other special cause can not be immediately removed, the officer may, within five days thereafter, file in the office of the clerk of the town, in which the attachment is made, an attested

copy of so much of his return on the writ, as relates to the attachment, with the value of the defendant's property which he is thereby commanded to attach, the names of the parties, the date of the writ, and the court to which it is returnable; and such attachment is as effectual and valid, as if the property had remained in his possession and custody." R. S., c. 81, § 26.

Here the statute comes to a full stop. And it will be noticed that the validity of the attachment is made to depend upon the doings of the officer, and not upon anything to be done by the clerk. If the officer has made an attachment, and made a proper return of it to the clerk's office, the express words of the statute are that the attachment shall be "as effectual and valid as if the property had remained in his possession and custody."

Then follows another and an independent provision, and one which originally formed a separate section of the statute, directing the clerk to "receive the copy, noting thereon the time, enter it in a suitable book, and keep it on file for the inspection of those interested therein." But there is nothing in the words of the statute, or its history, or in reason, why the attachment, which has been perfected by the officer, should be dissolved or invalidated by an imperfect performance of duty by the clerk. We think such will not be the result. We do not doubt the liability of the clerk to any one who may have been injured by his negligence. But the facts reported fail to show any injury to the plaintiff.

*Judgment for defendant.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.